IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | Cr. No. 02-074T |
| | ) | |
| DANIEL SALAKO | ) | |

GOVERNMENT'S RESPONSE TO DEFENDANT'S
<u>MOTION FOR PERMISSION TO LEAVE THE COUNTRY</u>

Comes now the United States of America, by and through its attorneys, Robert Clark Corrente, United States Attorney, and Stephanie S. Browne, Assistant United States Attorney, and hereby responds to the Defendant's Motion for Permission to Leave the Country.

<u>TRAVEL</u>

On August 21, 2002, the grand jury indicted defendant, Daniel Salako, with two counts of intent to defraud through the use of access devices and credit cards, in violation of 18 U.S.C. §§ 1029(a)(2) and (b)(1). On October 30, 2002, defendant Salako pleaded guilty to the indictment pursuant to an agreement with the government. On March 14, 2003, this Court imposed a sentence of 18 months confinement, 2 years of supervised release and restitution in the amount of $32,475.93 to various victims. Defendant is currently serving his supervised release sentence and has paid the restitution as required.

## FACTS

Salako ran Danday Instant Check and Mailbox Rentals at 765 Dexter Street, Central Falls, Rhode Island. Michael D. Clifton, a Chicago police officer, learned that a number of credit cards had been issued in his name with the Dexter Street address despite the fact that Mr. Clifton has never lived in nor visited Rhode Island. Salako had used Mr. Clifton's name, date of birth, and Social Security number to apply for credit cards from American Express, NextCard, Aspire Visa, Home Depot, Fusion (Fleet), and Providian Visa. Although Salako used the name Michael Clifton, on several applications Michael is spelled "Micheal." A search of the Dexter Street address resulted in the seizure of a number documents relating to those accounts as well as a photocopy of a New Jersey driver's license in the name of Michael D. Clifton, with a photo of Salako. The license contained the unusual spelling of Michael.

Salako's business also involved renting mailboxes and operating as a money wire service. The documents seized include a form for the wiring of $5,000 to Nigeria on behalf of Mr. Clifton, a transaction the real Mr. Clifton did not make. Salako's records also do not show Mr. Clifton a renter of a mailbox during the period when the credit cards were in effect with Dexter Street address. The approximate amount attributable to Salako's use of the credit cards is $14,199. He made purchases in Massachusetts and Rhode Island, and incurred late

fees and interest charges from the companies which were located in states other than Rhode Island.

G. L. Guitarte, a retired Harvard professor, died on April 9, 2000. He had maintained two accounts at Fleet Bank in Massachusetts, a savings account containing approximately $169,000 and a checking account containing approximately $5,874.63 at the time of his death. Prior to the bank receiving any notice of Mr. Guitarte's death, it received a telephonic request for a change of address from Brighton, Massachusetts to Pawtucket, Rhode Island for both accounts. On May 15, 16 and 17 Salako used the ATM card for Mr. Guitarte's accounts to withdraw $3,000, purchase a Postal money order for $2,800 and transfer $50,000 from savings to checking. Those transactions were documented by photographs taken at the ATM machines and a video tape taken at the Post Office. On May 15th a telephone transfer of $85,000 from savings to checking was made, presumably by Salako. No one from Mr. Guitarte's family or anyone else authorized to act on behalf of the estate had authorized those transactions.

ARGUMENT

Defendant asks that he be permitted to leave the country for travel to Nigeria based on his father's illness. His support for this is the uncorroborated facsimile which purports to be from a hospital in Nigeria. The facsimile itself came from "Nitel Adamsingba" at an unknown telephone number. That name is not one

of the two individuals who purportedly signed the notice concerning defendant's father.

Given that defendant's crimes of conviction deal with his fraudulent activities, this notice should not be accepted at face value. It is not unusual for various members of felons' families to suffer setbacks during a defendant's period of incarceration or supervised release. To allow a fraud felon to leave the country based solely on a facsimile is to invite his flight from the jurisdiction of the Court.

For the above reasons, defendant's motion should be denied.

Respectfully submitted,

UNITED STATES OF AMERICA,

By its Attorneys,

ROBERT CLARK CORRENTE
United States Attorney

Stephanie S. Browne

STEPHANIE S. BROWNE
Assistant U.S. Attorney

CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that on the 17TH day of October, 2005, I mailed a true copy of the Government's Response to Defendant's Motion for Permission to Leave the Country, ordinary mail and postage prepaid, to:

Joseph L. DeCaporale
400 Reservoir Avenue, Suite G
Providence, Rhode Island 02907

Paula Hasey